UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | |
| )                                                                       | |
| Plaintiff,         ) | |
| )                                                                       | |
| vs.                                                            ) | Cause No. 1:08-cr-142-WTL-KPF-1 |
| )                                                                       | |
| DEWAYNE CARTWRIGHT,       ) | |
| )                                                                       | |
| Defendant.       ) | |

## ORDER ON MOTION TO SUPPRESS

This cause is before the Court on Defendant Dewayne Cartwright's Motion to Suppress (Docket No. 23). Specifically, Cartwright seeks to suppress the evidence obtained from the August 12, 2008, warrantless search of the vehicle that Cartwright was driving. The Court held an evidentiary hearing on the motion on November 2, 2009. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions. For the reasons explained herein, Cartwright's Motion to Suppress is **DENIED**.

## I.  BACKGROUND

On August 12, 2008, Indianapolis Metropolitan Police Department ("IMPD") Officer Richard Stratman observed a green sedan without a visible license plate driving eastbound on 30th Street towards Sherman Drive. Officer Stratman activated his overhead lights and siren and pulled the vehicle over in the Double 8 Foods parking lot.

Officer Stratman approached the vehicle and asked the driver, who we now know to be Cartwright, to identify himself. Initially Cartwright identified himself as "Marvin Parker," stated that his birth date was January 12, 1989, and informed the officer that he did not know his social

security number. When a Bureau of Motor Vehicles ("BMV") check failed to confirm the driver's identity, Officer Stratman returned to the vehicle. This time he asked the passenger, Cieara Golliday,[1] to identify the driver. Golliday stated that the driver was "Marvin Parker" but his birthday was actually July 12, 1988. Again, a BMV check failed to confirm the driver's identity.

By this point, other IMPD officers arrived on the scene and decided to arrest the driver for Refusal to Identify in violation of Indiana Code 34-28-5-3.5. Cartwright was ordered out of the vehicle, placed in handcuffs, and seated on the ground. Again, he gave a false name. While Officer Stratman attempted to determine Cartwright's identity, IMPD Officer Barleston asked Golliday to step out of the car. After exiting the vehicle, leaving her toddler son unrestrained in the backseat of the car, Golliday apparently identified the driver as Dewayne Cartwright and told Officer Barleston that there was a gun in the car.[2] Officer Barleston searched the car and found a loaded 9-millimeter Ruger handgun in the backseat within reach of Golliday's son.

Once Officer Stratman obtained Cartwright's true identity he ran a criminal history check and found that Cartwright had a prior conviction for domestic battery. The police then arrested Cartwright for the additional offenses of child neglect, possession of an unlicensed handgun, possession of a handgun by a domestic batterer, not having a working license plate light, and not having a driver's license in his possession.

---

[1] Golliday has since married and changed her name to Cieara Douglas. Because, at the time of the events giving rise to this litigation she used the surname Golliday, the Court will continue to refer to her as Cieara Golliday.

[2] There is now a factual dispute regarding whether Golliday ever made this statement. At the suppression hearing she denied telling anyone that there was a gun in the car.

2

After determining that Golliday did not have a valid driver's license, the police called a tow truck to remove Cartwright's car from the Double 8 Foods parking lot. Pursuant to IMPD guidelines, the officers conducted an inventory search of the vehicle before it was towed.

Cartwright was subsequently charged as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In this motion he alleges that the warrantless search of the vehicle violated the Fourth Amendment, and thus, any evidence obtained during the search must be suppressed.

## II. DISCUSSION

At the suppression hearing, Golliday testified that she purchased the vehicle on her own, and although Cartwright was allowed to use the vehicle, and was driving on the evening of August 12, with her permission, it was her car. Based on these facts, the Government asserted that Cartwright lacks standing[3] to challenge the search of the vehicle.

The Seventh Circuit has long recognized that a "driver who does not own a vehicle may still challenge a search of the vehicle." *Figueroa-Espana*, 511 F.3d at 703-04 (citing *United States v. Garcia*, 897 F.2d 1413, 1418-19 (7th Cir. 1990)). In *Figueroa-Espana*, the Seventh Circuit stated: "In order to determine whether a driver of a vehicle may challenge a search, we apply a two-pronged test, asking whether the defendant had a subjective and an objective right to privacy." *Id*. at 704. "To satisfy the subjective portion of the test, a defendant must show that he

---

[3] The parties frame this issue as one of standing to challenge the search. However, as the Seventh Circuit has noted, "'in determining whether a defendant is able to show the violation of his . . . Fourth Amendment rights, the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *United States v. Figueroa-Espana*, 511 F.3d 696, 703 n.1 (7th Cir. 2007) (quoting *Minnesota v. Carter*, 525 U.S. 83, 87-88 (1998)). To be clear, the Court shall continue to refer to this issue as the "standing issue" even though this is not technically correct.

'actually and subjectively' held an expectation of privacy. An objective expectation is one that society recognizes as legitimate and reasonable." *Id*. (citations omitted). "The burden is on the defendant to establish that he has a protected Fourth Amendment interest in the [vehicle]." *Id.* (citing *United States v. Jackson*, 189 F.3d 502, 508 (7th Cir. 1999)).

In *Figueroa-Espana*, the Seventh Circuit held that the defendant did not have standing to challenge the search of a vehicle because he failed both prongs of the test. With respect to the subjective prong, Figueroa-Espana "produced little evidence to suggest that he actually held an expectation of privacy in the truck." *Id.* He "could not affirmatively state how he came to be behind the wheel of the truck, reciting three contradictory stories." *Id.* "At the suppression hearing . . . he changed his story again, testifying that he did not know who actually owned the truck." *Id.* "Without evidence suggesting that Figueroa-Espana was driving the truck with someone else's permission, he cannot establish that he had a subjective expectation of privacy in the vehicle." *Id.*

In the instant case, Cartwright established that he had a subjective expectation of privacy in the vehicle because he was driving it with Golliday's consent. Indeed, the Government concedes this point, noting "it appears that the Defendant could assert a subjectively reasonable expectation of privacy in the car because he was driving it with the owner's consent." Gov't Br. at 2. However, this subjective expectation is not enough – Cartwright must also show that he had an objective expectation of privacy in the automobile.

In *Figueroa-Espana* the Seventh Circuit emphasized that the defendant's lack of a driver's license meant that he did not have an objective expectation of privacy in the truck he was driving. Because Figueroa-Espana did not have a valid driver's license he "should not have

been driving any vehicle, let alone a truck of dubious origins, and therefore his objective expectation of privacy in the truck was neither legitimate nor reasonable." *Id.* (citation omitted). Similarly, in *United States v. Haywood*, 324 F.3d 514, 516 (7th Cir. 2003), the Seventh Circuit emphasized that because the defendant was an unlicensed driver, he "should not have been driving any car, much less a rental car that Enterprise never would have given him permission to drive. As a result, Haywood's expectation of privacy was not reasonable."

    In the instant case, the Government argues that because Cartwright did not have a driver's license in his possession and because he actively concealed his identity, he "should not have been driving any vehicle that night." Gov't Br. at 3-4. Thus, says the Government, Cartwright lacked an objective expectation of privacy in the vehicle. Unfortunately for the Government, Cartwright <u>did</u> have a valid driver's license on the night of the traffic stop. *See* Def. Ex. 1. Unlike the defendant in *Haywood* and the defendant in *Figueroa-Espana*, neither of whom had a valid driver's license, and thus lacked an objective expectation of privacy in the vehicles they were driving, Cartwright, who had a valid driver's license, had an objective expectation of privacy in the vehicle. Accordingly, Cartwright satisfies both prongs of the test and may challenge the warrantless search of the vehicle.

    Turning to the substance of his Motion to Suppress, Cartwright argues that the search of the vehicle was an unlawful search incident to arrest. He asserts that this case is analogous to *Arizona v. Gant*, 129 S.Ct. 1710 (2009), because he was pulled over for a traffic infraction and arrested for Refusal to Identify. Because no evidence of either of these offenses could be found in the vehicle, and because the search of the automobile occurred after Cartwright was restrained away from the vehicle, he claims that the warrantless search was unconstitutional and any

evidence obtained from the search must be suppressed.

In *Gant*, the Supreme Court held: "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1723. Absent these justifications, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.* at 1723-24. Thus, even if *Gant* applies to Cartwright's case and renders the search incident to arrest unlawful, if the Government can show that another exception to the warrant requirement applies, then the search may be upheld on those grounds.

The Government asserts that two other exceptions to the warrant requirement apply in the present case: the automobile exception and the inventory exception. In *Carroll v. United States*, 267 U.S. 132, 153 (1925), the Supreme Court set forth the automobile exception and emphasized the difference between the search of a non-movable location and the search of a readily movable location. Because automobiles are mobile, "it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* Thus, warrantless searches of automobiles are permitted if the police have "reasonable or probable cause." *Id.* at 155. Subsequently, in recognition of the inherent danger to officer safety posed by traffic stops, the Supreme Court held that officers may make protective searches of automobiles "when police have a reasonable belief that the suspect poses a danger." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). Accordingly, if officers have reasonable suspicion, then they can conduct a limited search of the passenger compartment for weapons. *See id.* If officers have probable cause, then they may conduct a warrantless search of the

vehicle. *See Chambers v. Maroney*, 399 U.S. 42, 50-51 (1970).

In the instant case, the Government claims that it had at least reasonable suspicion to search the vehicle for weapons because Golliday allegedly told one of the officers that there was a gun in the car. However, there is now a factual dispute about whether Golliday actually made this statement. Taking all of the facts in Cartwright's favor and assuming that Golliday did not make the alleged statement and the automobile exception does not apply, the evidence uncovered during the search is still admissible under the inventory exception and the doctrine of inevitable disclosure.

The doctrine of inevitable disclosure essentially states that the exclusionary rule should not bar the introduction of evidence, obtained through illegal means, when the police would have obtained the evidence even if no misconduct had occurred. *Nix v. Williams*, 467 U.S. 431, 444 (1984). "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then . . . the evidence should be received." *Id.* In the instant case, the police would have discovered the gun in Golliday's car when they conducted an inventory search of the vehicle prior to towing it from the scene.

The inventory search exception to the warrant requirement was explicitly recognized in *South Dakota v. Opperman*, 428 U.S. 364 (1976). In *Opperman*, the Supreme Court stated that "following standard police procedures" and conducting an inventory search of a lawfully impounded vehicle was not unreasonable under the Fourth Amendment. *Id.* at 375-76. In Cartwright's case, the police made the decision to tow the vehicle from the scene because Golliday did not have a driver's license and Cartwright, who possessed a driver's license, was

under arrest. Thus, there were no licensed drivers present and able to remove the vehicle from the Double 8 Foods parking lot. Pursuant to IMPD departmental policy, "[w]henever an officer takes a vehicle into custody, an inventory search will be conducted prior to impoundment and a detailed listing of any property found in the vehicle will be made." Gov't Ex. 2 ¶ IV.A. Accordingly, before the vehicle was taken into custody, an inventory search of the vehicle was conducted by an IMPD officer. Had the gun not been found earlier, it would have been inevitably discovered at this point. Therefore, Cartwright's Motion to Suppress is denied and the evidence obtained from the search of the vehicle is admissible.

### CONCLUSION

For the foregoing reasons, Cartwright's Motion to Suppress (Docket No. 23) is **DENIED**.

SO ORDERED: 12/01/2009

Copies to:

R. Scott Ingram
United States Attorney's Office
scott.ingram@usdoj.gov

Juval O. Scott
Indiana Federal Community Defenders
juval.scott@fd.org

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana